IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

**FLOYD ALLEN**                                                                      **PLAINTIFF**

v.                                            No. 5:14–CV–392–BD

**CAROLYN W. COLVIN, Acting Commissioner,**
**Social Security Administration**                                    **DEFENDANT**

<u>**ORDER AFFIRMING THE COMMISSIONER**</u>

Floyd Cornell Allen seeks judicial review of the denial of his application for

disability benefits.[1]  Mr. Allen has applied for disability benefits many times;[2] in this

case, he maintains that he has been disabled since June 23, 2012, when he lost his job

with Tyson Poultry.[3]  He based disability on  asthma, high blood pressure, and poor

circulation in the legs.[4]

**The Commissioner's decision**.  After considering the application, the

Commissioner's ALJ determined that Mr. Allen had severe impairments — status post

---

[1]SSA record at pp. 203 & 210 (applying on Aug. 13, 2012 and alleging disability beginning June 23, 2012).

[2]*Id*. at p. 47 (explaining he applied for disability nine times because prison doctor told him he could get disability for asthma and high blood pressure).

[3]*Id*. at p. 343 (reporting that he was terminated on June 23, 2012), p. 344 (working for poultry company until June 2012) & p. 349 (showing he last worked for Tyson Poultry).

[4]*Id*. at p. 343.

left ulnar styloid fracture, hypertension, asthma, sciatica, and left leg pain[5] — but that he could do some light and sedentary work.[6]  Because a vocational expert identified available work,[7] the ALJ determined Mr. Allen was not disabled and denied the application.[8]

   After the Commissioner's Appeals Council denied a request for review,[9] the ALJ's decision became a final decision for judicial review.[10]  Mr. Allen filed this case to challenge the ALJ's decision.[11]  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[12]

---

[5]*Id*. at p. 20.

[6]*Id*. at p. 21.

[7]*Id*. at 61-63.

[8]*Id*. at pp. 27-28.

[9]*Id*. at p. 1.

[10]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the Commissioner's appeal procedure permits claimants to appeal only final decisions).

[11]Docket entry # 1.

[12]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant

**Mr. Allen's allegations**.  Mr. Allen contends that the ALJ over-stated his ability to work.  According to Mr. Allen, new evidence shows he had extensive impairments. He says the Appeals Council should have asked medical experts about whether new evidence shows he met listings 1.02 and 1.04.  He also maintains that his case required a consultative exam.  He contends his primary care physician's (PCP) medical questionnaire deserved more weight.  He faults the ALJ for not mentioning an agency statement that his medical condition prevented him from working.  For these reasons, he argues, substantial evidence does not support the decision.[13]

**Applicable legal principles**.  For substantial evidence to exist, a reasonable mind must accept the evidence as adequate to support the decision that Mr. Allen can do some light and sedentary work.[14]  "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[15] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."[16]  The ALJ required

disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[13]Docket entry # 12.

[14]*Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).

[15]20 C.F.R. §§ 404.1567(b) & 416.967(b).

[16]20 C.F.R. §§ 404.1567(a) & 416.967(a).

3

incidental interpersonal contact, and environments without temperature extremes, dust, and fumes.  A reasonable mind would accept the evidence as adequate to show that Mr. Allen could work within these limits.

**Medical evidence does not establish disabling impairment**.  A claimant must establish impairment by medical evidence.[17]  During the relevant time period, Mr. Allen's blood pressure fluctuated.  His PCP adjusted his medications for better control and prescribed smoking cessation.[18]  The PCP's recommendations indicate that treatment and compliance could control Mr. Allen's blood pressure.  "An impairment which can be controlled by treatment or medication is not considered disabling."[19]

---

[17]42 U.S.C. § 423 (d)(5)(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."); 20 C.F.R. §§ 404.1529 & 416.929 ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.").

[18]SSA record at pp. 499, 523 & 533.

[19]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

Mr. Allen complained about left knee pain.  Diagnostic imaging was negative,[20] but there was minimal tenderness with range of motion.[21]  The descriptor "minimal" suggests no disabling pain.  A few weeks later, the PCP found some fluid in the kneecap.[22]  The PCP prescribed an anti-inflammatory drug and a pain reliever.[23]  These recommendations indicate knee pain could be controlled with treatment.

Mr. Allen later complained about pain in his left leg and low back.[24]  Diagnostic imaging of the left hip showed a probable small superior anterior labral tear.[25]  Mr. Allen's orthopedist attributed no symptoms to the tear.

Diagnostic imaging of the lumbar spine showed a left foraminal disc herniation at level L3/4, mild bone spurring at level L5/S1, and degenerative changes and mild disc bulging at levels L2/3 an L4/5.[26]  The left foraminal disc herniation at level L3/4 probably explained his leg pain because the herniation effaced the exiting nerve root and because nerves at that level power the legs.  Mr. Allen said his orthopedist was going to

---

[20]SSA record at p. 534.

[21]*Id*. at p. 533.

[22]*Id*. at p. 534.

[23]*Id*. at pp. 533-34.

[24]*Id*. at p. 377.

[25]*Id*. at pp. 12 & 555.

[26]*Id*. at pp. 554.

operate,[27] but treatment records do not mention surgery; the orthopedist recommended

a spine specialist.[28]  The record does not show whether Mr. Allen saw a spine specialist,

but new evidence shows he was treated with epidural steroid injections, not surgery.[29]

Like other treatment recommendations, the injections indicate back and leg pain could

be controlled with treatment.

Although Mr. Allen says the Appeals Council should have asked medical experts

to determine whether he met listings 1.02 (major dysfunction of a joint) or 1.04 (disorder

of the spine), both listings require an inability to ambulate effectively on a sustained

basis.  Mr. Allen walked with a left-sided limp when he saw the orthopedist, but no

evidence, including the new evidence — diagnostic imaging of the left hip and lumbar

spine, and documentation of epidural steroid injections — indicates that Mr. Allen was

unable to ambulate effectively.

**No need existed for a consultative physical exam**.  An ALJ must order a

physical exam when medical records provide insufficient medical evidence to

determine whether the claimant is disabled.[30]  The medical evidence here provided

---

[27]*Id*. at p. 50.

[28]*Id*. at p. 529.

[29]*Id*. at pp. 570 & 581.

[30]*Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994); 20 C.F.R. §§ 404.1517 &
416.917 ("If your medical sources cannot or will not give us sufficient medical evidence

sufficient evidence to determine whether Mr. Allen was disabled.  Mr. Allen based his

claim on asthma, high blood pressure, and poor circulation in his legs.  PCP treatment

records address asthma and high blood pressure, but document no complaints about

circulation in the legs.  He later complained about leg pain.  The orthopedist's treatment

records address leg pain.  Neither the PCP's nor orthopedist's records show disabling

impairment.

**Mr. Allen did not comply with treatment recommendations**.  A claimant's

failure to follow medical advice without good reason bars him from obtaining disability

benefits.[31]  The PCP warned Mr. Allen about the effects of his cigarette smoking since

2006.[32]  Mr. Allen had asthma and high blood pressure, but he continued to smoke.

---

about your impairment for us to determine whether you are disabled or blind, we may
ask you to have one or more physical or mental examinations or tests.").

[31]*Tome v. Schweiker*, 724 F.2d 711, 713-14 (8th Cir. 1984) ("The Secretary's
regulations provide that a claimant who fails to treat a remediable condition without
good reason is barred from entitlement to benefits."); 20 C.F.R. §§ 404.1530 & 416.930
("In order to get benefits, you must follow treatment prescribed by your physician if
this treatment can restore your ability to work.").

[32]SSA record at p. 446 (advised on Jan. 3, 2006 to stop smoking two packs per
day).  *See id*. at pp. 504, 516, 523 & 533.

Medical literature also links smoking to chronic pain.[33]  Mr. Allen complains about chronic back and leg pain.  During the hearing, he implied that he had stopped smoking in April 2013,[34] but treatment records show he smoked in July 2013.[35]  The inconsistency between his representation at the hearing and treatment records implicates noncompliance.

**The PCP's medical questionnaire deserved no more weight**.  The regulations provide for controlling weight if a treating physician's opinion is "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence,"[36] but the ALJ may discount an

---

[33]Toby N. Weingarten, Yu Shi, Carlos B. Mantilla, W. Michael Hooten & David O. Warner, *Smoking and Chronic Pain: A Real-but-Puzzling Relationship*, 35-36 Minn. Med., Mar. 2011; Rebecca J. Frey, Low Back Pain, 4 The Gale Encyclopedia of Med. 2646 (4th ed.) (people with low back pain should stop smoking); Julia Barrett, Sciatica, 5 The Gale Encyclopedia of Med. 3865 (4th ed.) ("Cigarette smoking may also predispose people to pain….").

[34]SSA record at pp. 55-56.

[35]*Id*. at p. 525.

[36]20 C.F.R. §§ 404.1527 & 416.927.

unsupported opinion.[37]  The PCP reported numerous limitations,[38] but treatment notes do not support the report.  For example, the PCP reported limitations with using the neck, but treatment records document no complaints about the neck.  The ALJ gave the questionnaire some weight.  Mr. Allen says the ALJ should have specified the portions of the questionnaire he credited, but the ALJ is not required to discuss every piece of evidence.[39]  The decision indicates that the ALJ accepted the limitations flowing from asthma,[40] and rejected other reported limitations as unsupported exaggerations.

   **The agency never determined Mr. Allen was disabled**.  Mr. Allen implies that the agency once determined he was disabled, but that mischaracterizes the record.  This charge flows from the following statements in the agency's initial denial of the claim: "The evidence shows your condition is serious now and prevents you from working.

---

   [37]*Perkins v. Astrue*, 648 F.3d 892, 897-98 (8th Cir. 2011) ("ALJ may discount or even disregard the opinion of a treating physician…where a treating physician renders inconsistent opinions that undermine the credibility of such opinions"); *Prosch v. Apfel*, 201 F.3d 1010, 1013-14 (8th Cir. 2000) ("[A]n ALJ may grant less weight to a treating physician's opinion when that opinion conflicts with other substantial medical evidence contained within the record.").

   [38]SSA record at pp. 535-38.

   [39]*Wheeler v. Apfel*, 224 F.3d 891, 896 n.3 (8th Cir. 2000) (ALJ's failure to describe claimant's entire medical history does not mean ALJ disregarded certain evidence); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ( "[A]n ALJ is not required to discuss every piece of evidence submitted.").

   [40]SSA record at p. 538 ("Has asthma so dusty, chemical environment would be difficult.").

However, your condition is expected to improve.  We have determined that your

condition is not expected to remain severe enough for 12 months in a row to keep you

from working."[41]  These statements lack probative value in determining whether a

claimant is disabled.  To be disabling under social security law, an impairment must

prevent the claimant from working for at least 12 continuous months.[42]  The statements

only mean that an impairment may have prevented Mr. Allen from working for less

than 12 months.

**Vocational evidence supports the decision**.  The ALJ determined that Mr. Allen

could not perform his past work.  If a claimant with a non-exertional impairment shows

he cannot do his past work, the ALJ consults a vocational expert to determine whether

work exists that the claimant can do.[43]  Here, the ALJ asked a vocational expert about

light and sedentary work involving occasional climbing, stooping, crouching, kneeling

and crawling.[44]  The vocational expert identified available jobs, but the ALJ's statement

---

[41]*Id*. at pp. 116 & 119.

[42]*See* 42 U.S.C. § 1382c(a)(3)(A) (specifying duration requirement for disability benefits); 20 C.F.R. § 404.1505(a) ("The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.").

[43]20 C.F.R. §§ 404.1520 & 416.920.

[44]SSA record at pp. 61-63 (including occasional climbing, stooping, crouching, kneeling and crawling in hypothetical questions).

about Mr. Allen's ability to work omits the postural limitations.  According to Mr.

Allen, the omission undermines the decision.  The medical evidence supports postural

limitations, but the omission provides no basis for relief because the vocational expert

identified available sedentary work[45] and postural "activities are not usually required in

sedentary work."[46]

Mr. Allen complains about the omission of limitation flowing from a left wrist

injury.  The injury occurred in February 2006.[47]  Since then, he worked full-time, using

his wrist.  In March 2012, the PCP thought Mr. Allen might have some carpal tunnel

syndrome and prescribed a wrist splint.[48]  Mr. Allen returned to work.  An impairment

"that was not disabling during working years and has not worsened cannot be used to

prove present disability."[49]  The vocational evidence shows work exists that Mr. Allen

---

[45]*Id*. at pp. 62-63 (identifying assembler, laundry folder, and ticker seller as light jobs and optical goods assembler, lens inserter, and order clerk as sedentary jobs).

[46]SSR 96-9p, *Pol'y Interpretation Ruling Titles II & XVI: Determining Capability to Do Other Work--Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work*.

[47]SSA record at 408.

[48]*Id*. at p. 507.

[49]*Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).  *See also Dixon v. Sullivan*, 905 F.2d 237, 238 (8th Cir. 1990) (impairments are disabling where claimant worked with them for years without any worsening of  condition).

could do, regardless of whether such work exists where he lives, whether a job vacancy

exists, or whether he would be hired if he applied for work.[50]

**Conclusion**.  Substantial evidence supports the ALJ's decision.  The ALJ made no

legal error. For these reasons, the court DENIES the request for relief (docket entry # 2)

and AFFIRMS the decision denying the application.  The hearing scheduled for

September 17, 2015, is cancelled.

Dated this 7th day of August, 2015.

_____

UNITED STATES MAGISTRATE JUDGE

---

[50]42 U.S.C. § 1382c(a)(3)(B).